

# THE ATTORNEY GENERAL
## OF TEXAS

August 23, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Mark W. Stiles  
Chairman  
County Affairs Committee  
Texas House of Representatives  
P. O. Box 2910  
Austin, Texas    78769

Opinion No.   JM-944

Re:   Provision   of   sewer  
service by a   municipality  
to newly annexed territory  
(RQ-1380)

Dear Representative Stiles:

You ask   three questions   with regard   to the   proposed annexation of the Commanche Hills Utility District [CHUD] by the City of Harker Heights.   The first we address is:

> Can a city annex in one year an amount  of area   under   thirty   percent   (30%)   of   its incorporated area   as of   January 1   of   that year and then in the   same year also annex   a municipal utility district which   encompasses an area equal to sixty percent of the   city's incorporated area   as of   January 1   of   that year?

We assume that by "municipal utility district" you mean to refer to the Commanche Hills Utility District [CHUD].   We do not find, however, that   the CHUD is a municipal   utility district.   The law creating the district referred to it as a "conservation and   reclamation district."   Acts 1967,   60th Leg., ch. 624,   § 1.   Section   5 of that   act provides   that CHUD shall have   the rights, powers,   etc., applicable to   a "water control and improvement district" to the extent   such rights,   powers,   etc.,   are   not   inconsistent with   the provisions of the act.

CHUD under its creating act, appears to be a "water   or sewer district" within the meaning of section 43.071 of   the Local Government Code.   Section 43.071, provides in part:

> (a)   In this section,   'water or sewer   or district'   means   a   district   or   authority created under Article   III, Section 52,   Subsections (b)(1)   and   (2), or   under Article

XVI, Section 59, of the Texas Constitution that provides or proposes to provide, as its principal function, water services or sewer services or both to household users. The term does not include a district or authority the primary function of which is the wholesale distribution of water.

(b) A municipality may not annex area in a water or sewer district unless it annexes the entire part of the district that is outside the municipality's boundaries. This restriction does not apply to the annexation of area in a water or sewer district if the district is wholly or partly in the extraterritorial jurisdiction of more than one municipality.

(c) An annexation subject to Subsection (b) is exempt from the provisions of this chapter that limit annexation authority to a municipality's extraterritorial jurisdiction if:

(1) immediately before the annexation, at least one-half of the area of the water or sewer district is in the municipality or its extraterritorial jurisdiction; and

(2) the municipality does not annex in the annexation proceeding any area outside its extraterritorial jurisdiction except the part of the district that is outside its extraterritorial jurisdiction.

(d) Area annexed under Subsection (b) is included in computing the amount of area that a municipality may annex under Section 43.055 in a calendar year. If the area to be annexed exceeds the amount of area the municipality would otherwise be able to annex, the municipality may annex the area but may not annex additional area during the remainder of that calendar year, except area subject to Subsection (b) and area that is excluded from the computation under Section 43.055. (Emphasis added.)

Section 43.071(d) refers to the limitations on amount of territory which may be annexed in a year under section 43.055. Section 43.055 reads:

> (a) In a calendar year, a municipality may not annex a total area greater than 10 percent of the incorporated area of the municipality as of January 1 of that year, plus any amount of area carried over to that year under Subsection (b). In determining the total area annexed in a calendar year, an annexed area is not included if it is:
>
> (1) annexed at the request of a majority of the qualified voters of the area and the owners of at least 50 percent of the land in the area;
>
> (2) owned by the municipality, a county, the state, or the federal government and used for a public purpose;
>
> (3) annexed at the request of at least a majority of the qualified voters of the area; or
>
> (4) annexed at the request of the owners of the area.
>
> (b) If a municipality fails to annex in a calendar year the entire 10 percent amount permitted under Subsection (a), the municipality may carry over the unused allocation for use in subsequent calendar years.
>
> (c) A municipality carrying over an allocation may not annex in a calendar year a total area greater than 30 percent of the incorporated area of the municipality as of January 1 of that year.[1] (Emphasis added.)

---

1. Acts 1987, 70th Leg., ch. 1077 added language to these provisions, which takes effect as part of the Local Government Code pursuant to V.T.C.A. Government Code and section 311.031. None of the provisions of the amendatory act, however, alter the conclusions we reach here with respect to the issues presented.

Because your question is based on the city's having annexed "under thirty percent of its incorporated area," we assume that the City of Harker Heights has carried over allocations from previous years pursuant to subsections (b) and (c) of section 43.055. In the circumstances you describe, the city has authority, under section 43.071(d), to annex the territory involved.

Your other two question are:

> (1) If a city provides sewer service and has previously extended sewer lines within its existing city limits and such city annexes an area that has no sewer service, is the city <u>required</u> to extend lines to those newly annexed areas with land uses and population densities similar to the ones in the previous city limits?

> (2) If a city provides sewer service but has not previously extended sewer lines within its existing city limits and such city annexes an area that has no sewer service, is the city <u>required</u> to extend lines to those newly annexed areas with land uses and population densities similar to the ones in the previous city limits? (Emphasis added.)

We note first that we find no requirement in the pertinent statutory provisions that a <u>higher</u> level of services be provided in any area to be annexed than are provided in an area of the city having similar characteristics of topography, land utilization, and population density. Section 43.056 of the Local Government Code speaks only of <u>maintenance</u> of existing services, in subsection (b)(4), and <u>uniform</u> levels of services in subsection (d). Therefore, in answer to question number 2, we conclude that no extension of sewer services to annexed areas is required, either in fact or under a "service plan," where such services are not provided in equivalent areas within the existing city limits.

Moreover, turning to question number 1, we further conclude that a city may in no case literally be <u>required</u> to provide any given services to annexed areas.

Section 43.056 of the Local Government Code requires an annexing city to develop a "service plan" for provision of services to the annexed area:

(a)   Before the publication  of the  notice of the  first hearing  required under  Section 43.052, the governing body of the municipality municipality proposing  the  annexation  shall direct  its  planning   department  or   other appropriate municipal department to prepare  a service plan that  provides for the  extension of  municipal  services  to  the  area  to  be annexed.  The municipality  shall provide  the services by  any of the  methods by  which  it extends the services to any other area of  the municipality.

(b)   The  service  plan   must  include   a program  under  which  the  municipality  will provide the  following  services in  the  area within 60 days after the effective date of the annexation of the area:

(1)   police protection;

(2)   fire protection;

(3)   solid waste collection;

(4)   maintenance of water and wastewater facilities;

(5)   maintenance of  roads  and  streets, including road and street lighting;

(6)   maintenance of parks,  playgrounds, and swimming pools; and

(7)   maintenance of  any other  publicly owned facility, building, or service.

(c)   The service plan  must also include  a program  under  which  the  municipality  will initiate the  acquisition or  construction  of capital improvements  necessary for  providing municipal services  for  the area.   The  con-struction shall begin within 2 1/2 years after the effective date  of  the  annexation of  the area.  The acquisition or construction  of the facilities shall be accomplished by  purchase, lease, or other contract or by  the municipal-ity succeeding to the powers, duties,  assets, and obligations of a conservation and  reclam-ation district  as authorized  or required  by

law.  Money received from the sale of bonds or
evidenced by other instruments of indebtedness
may not be allocated to the area for a  period
of 180 days.

(d)  A service plan  may not provide  fewer
services or  a  lower  level  of  services  in
the area than were  in existence  in the  area
immediately preceding the date of the  annexa-
tion.  This section does not require that a
uniform level of services be provided to
each area of the municipality if different
characteristics of topography, land use,
and population density are considered a
sufficient basis for providing different
levels of service.

(e)  If only  a  part  of the  area  to  be
annexed is  actually annexed,  the  governing
body shall direct the department to prepare  a
revised service plan for that part.

(f)  The proposed service plan must be made
available for public inspection and  explained
to the inhabitants of  the area at the  public
hearings held under Section 43.052.  The  plan
may be  amended  through  negotiation  at  the
hearings, but the provision of any service may
not be deleted.  On  completion of the  public
hearings, the service  plan shall be  attached
to  the  ordinance  annexing  the  area  and
approved as part of the ordinance.

(g)  On approval by the governing body, the
service plan is a contractual obligation  that
is not subject to  amendment or repeal  except
that if the governing  body determines at  the
public hearings  required by  this  subsection
that changed conditions  or subsequent  occur-
rences make  the  service plan  unworkable  or
obsolete, the  governing  body may  amend  the
service plan to conform to the changed  condi-
tions or subsequent  occurrences.  An  amended
service plan  must provide  for services  that
are comparable to or  better than those  esta-
blished in the service plan before  amendment.
Before any amendment is adopted, the governing
body  must  provide  an  opportunity  for
interested  persons  to  be  heard  at  public

> hearings called and held in the manner provided by Section 43.052.
>
> (h)  A service plan is valid for 10 years. Renewal of the service plan is at the discretion of the municipality.
>
> (i)  A municipality that annexes an area shall provide the area or cause the area to be provided with services in accordance with the service plan for the area.[2]  (Emphasis added.)

In Larkins v. City of Denison, 683 S.W.2d 754 (Tex. App. - Dallas 1984, no writ), landowners of an area which was the subject of a city annexation ordinance sought injunctive relief from the ordinance on the grounds that the city "did not have the resources necessary to implement the services which art. 970a (Vernon's 1963 and Vernon Supp. 1984) requires it to provide for newly annexed areas." Id. at 755.  See Local Gov't Code § 43.056 (present codification of article 970a).  The court overruled the appellant landowners' contention in this regard and affirmed the trial court's denial of injunctive relief, holding that section 10(F) of article 970a (currently codified as section 43.141 of the Local Government Code), provided disannexation as the exclusive remedy for the city's failure to meet the service plan if and when such failure occurs.  The court also ruled with respect to the appellants' contentions that the annexation was fraudulent and/or improperly motivated as follows:

> It is well-settled that the determination of municipal boundaries is a question for political rather than judicial resolution. [Citation omitted.] Under article 970a, the legislature delegated its powers in this regard to the cities, subject to certain limitations.  Because those limitations apply to the location of the annexed area rather than to the purposes for which annexation is sought, appellants may not judicially challenge the validity of the annexation ordinance on the basis that it was improperly motivated.

---

2.   See footnote 4.

Id. at 756.   Thus, despite the language of, for example, subsections (a) and (i) of section 43.056, to the effect that the municipality "shall" provide services, it would appear in light of Larkins that the exclusive remedy for the city's not providing such services in accordance with the service plan is disannexation under current section 43.141 of the Local Government Code.

We construe your question then as asking whether a city proposing to annex an area is required to provide in the service plan required by section 43.056 for the sewer service extensions about which you inquire.[3]

_____

3.   The City of Austin in its brief in this matter suggested that sewer extensions may not be among the services contemplated by section 43.056.   The only specific reference to sewer services in section 43.056 is found in subsection (b)(4) of that section, which requires provision in the service plan for "maintenance of water and wastewater facilities" within 60 days of the date of annexation (emphasis added).   Subsection (a) of section 43.056, however, provides in part:

> [T]he governing body of the municipality proposing the annexation shall direct its planning department or other appropriate municipal department to prepare a service plan that provides for the extension of municipal services to the area to be annexed.   The municipality shall provide the services by any of the methods by which it extends the services to any other area of the municipality. (Emphasis added.)

Subsection (c) of that section provides in part:

> The service plan must also include a program under which the municipality will initiate the acquisition or construction of capital improvements necessary for providing municipal services for the area.   The construction shall begin within 2 1/2 years after the effective date of the annexation of the area.

(Footnote Continued)

Differences in levels of service provided annexed areas and existing areas of the city must be based on differences, or reasonably contemplated differences in topography, land use, and population density. Section 43.056, subsection (d). It is the prerogative of the city, in the first instance, to make determinations in the service plan about levels of service in annexed areas.[4]   If the service plan adopted were itself legally defective to the extent of being void or voidable -- for example, if it were not adopted in compliance with the hearings requirements of section 43.052, or if it did not reflect _any_ consideration by the city of

_____

(Footnote Continued)

We believe that the restriction of wastewater services to "maintenance" of existing services applies only to the requirement of subsection (b) that _maintenance_ of such services be provided within 60 days of annexation, but that subsections (a) and (c) clearly contemplate extension, _i.e._, improvement of such services. Therefore, sewer extensions are, we believe, "municipal services" within the meaning of section 43.056.

4.   Acts 1987, 70th Leg., ch. 1077 amended section 10 of article 970a, now codified in the Local Government Code, by, _inter alia_, adding the following underlined language to the provision now codified as the first sentence of section 43.056, subsection (d) of the Local Government Code.

In no event shall a service plan provide fewer services or a lower level of services in the area to be annexed than were in existence in that area at the time immediately preceding the annexation _or which are_ _otherwise available in other areas of the city with_ _land uses and population densities similar to those_ _reasonably contemplated or projected in the newly_ _annexed area_.

Pursuant to Government Code section 311.031(c) the amendment takes effect as part of the Local Government Code. However, a reading of this amendment does not alter our conclusion that the determination of whether topography, land use, and population density factors warrants provision of a given level of services is a political matter subject to the _consideration_ given the relevant factors by the city. Note that this amendatory act also amended other provisions now codified under section 43.056, but again we do not find that such amendments affect the conclusions we reach here.

differences in topography, land use, and population density factors -- we believe an aggrieved party might obtain relief by way of an injunction action, or by way of a *quo warranto* proceeding brought by the state.

## S U M M A R Y

If all other legal requirements are met, the City of Harker Heights may annex the Commanche Hills Utility District, even though the city has annexed, in the same year, other territory equalling up to thirty percent of the city's territory.

A city may not literally be *required* to provide services to an annexed area. If the city does not provide services in accordance with the service plan developed pursuant to Local Government Code section 43.056, dis-annexation under section 43.141 is the exclusive remedy available to aggrieved persons.

The determination of the city governing body whether the topography, land use, and population density factors are a sufficient basis for providing a given level of services under section 43.056, subsection (d), is in the first instance the prerogative of the annexing city.

However, a service plan which is itself legally defective might be subject to relief other than disannexation.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

p. 4759

RICK GILPIN
Chairman, Opinion Committee

Prepared by William Walker
Assistant Attorney General